Would the clerk call the case, please? Case number 314-0733, Jamie Rivera, appellant by Thomas Roger, Jr. v. Board of Trustees of the Bolingbrook Police Pension Fund, and Henry Cunningham, appellate by Brian Lombardi. Mr. Roger? Good morning. Good morning. May it please the Court, my name is Tom Roger. I represent Officer Jamie Rivera, a police officer in the Bolingbrook Police Department that was injured on a call for service on March 16th of 2010. Officer Rivera was hired by the Bolingbrook Police Department in January of 2006. Prior to being hired in Bolingbrook, he had worked for two other police departments for approximately 12 years, and he had sustained injuries to his right knee prior to coming on the Bolingbrook Police Department. I think the facts in this case are mostly undisputed facts here, and even the Board's findings I think agree with many of the facts as I'm going to represent them here today. Officer Rivera was hired on January 2006. He passed all the necessary physical requirements of the department, disclosed to the department his prior knee injuries, and was able to work in a full unrestricted capacity as a police officer up until the date of his injury on March 16th of 2010. At the time he was on duty on March 16th of 2010, he was working alone in a squad car. He had responded to a dispatch call of a domestic disturbance. The call was a husband who was alleged to have been beating his wife with a baseball bat. When Officer Rivera arrived on the scene, he was backing up a fellow officer who was already there. That officer was making his way into the residence. When he parked his squad car, he seen his fellow officer going into the residence. He opened up his squad door and was rushing to the scene to assist. When he opened his door, he heard a woman screaming as part of the domestic call. While rushing to the call, his right knee went one way, his left knee went the other. He felt immediate pain in his knee. He didn't fall to the ground and continued on with the call, but he did feel an injury to his right knee. Can I interrupt you for just one second and ask you, one of the doctors had said that he was walking down the sidewalk. Is there a dispute about whether he was rushing? I don't believe there is, because the pension board's own findings indicated that the officer was rushing to the call. And that's paragraph 18 and 19 of the board's decision. They did rely upon that physician, which I think was error, and I will get to that a little bit as I go through my argument here. But as I mentioned, the board's own finding indicates he was rushing to the call at the time of the injury. Well, rushing to the call may be rushing and driving the car to the call. It's the question of was he rushing when he got out of the car. I understand the question, Justice. The board's findings are very specific on that point in that when he opened his squad door after he parked, he was rushing to the assistance of the federal officer. And was it a mechanism of injury when he stepped on a curb? Yes. He was stepping on a curb or over a curb. Even the officer himself in his testimony before the board wasn't really sure if his focus was really on the call that he was going through. But as I mentioned, the board's findings were clear that he was rushing to the call and he felt the pain in his knee as he was going over this curb. And he continued the call. His partner was effectuating the rest outside the residence, and his testimony before the board and the board's findings were that he again felt his knee buckle while assisting his partner in arresting the husband at the scene of this domestic. There's no dispute it was a torn meniscus. There is not. The records are clear on that as well, and that the torn meniscus was a new injury as a result of this call. Continued the call. He had told a fellow coworker about the knee pain, but he continued his shift for that day. Sought treatment with his treating physician as soon as he possibly could get in with him, which was two days later on the 18th of March. His treating physician ordered up an MRI. Officer Rivera did report, though he was off the next two days after this call, he did report to work on the 19th of March. He hobbled in. The pain, swelling was getting progressively worse from the 18th. When he showed up at work, the sergeant immediately sent him to their physician, the employer's doctor, so he notified the sergeant and lieutenant. He was taken off work and he has never returned to work with the Baltimore Police Department since that day. His treating physician, as I mentioned, ordered up an MRI. The MRI showed a new meniscal tear in the knee. He sought physical therapy as a result of that new tear. He went approximately 26 times, never missed an appointment. Unfortunately, the physical therapy was making his knee worse as opposed to better. Ultimately resulted in surgery on January 19th of 2010. He had surgery to repair the meniscal tear and subsequent to that was unable to return to work. There's approximately six medical reports in this record. All physicians are clear and it's undisputed that he sustained a disabling injury. Now, if the board awarded him a non-duty, we feel that was error, that he should have received a line of duty based on the fact that the doctors either misstated the evidence that the board relied upon. This whole case rests on the doctors, basically. Basically, yes. Why don't you, in your time, go through what's in your favor, what is not, and if it's not, why not? Well, there's six reports. The board relied upon three reports. They relied upon Dr. Miller, Dr. Al-Aswad, and Dr. Mitton. Two of those were their own pension doctors. One was a workers' comp physician that had provided an IME report early on in the case, even prior to Officer Rivera having his surgery in July. Dr. Miller absolutely misconstrued the evidence in this case. His opinion, and this was the workers' comp doctor, the first report that comes along, he says that this was a sudden onset of symptoms that occurred while walking and that it was simply would have happened no matter what and it had nothing to do with the call in March of 2010. He also says that Officer Rivera was having symptoms every six months with respect to his right knee. Both of those are not contained in the record. The evidence deposition was taken of Dr. Miller as part of the workers' comp case. And during that evidence step, the attorney who was representing Officer Rivera on the comp case asked the doctor, you say every six months you had this problem, what do you base that on? And the doctor more or less admitted in the deposition that there was no records from 2008, 2009, or the months leading up to the injury in 2010 where there was any symptoms, any treatment, or any problems, pain, any limitations that the officer was having whatsoever with respect to his right knee. And that he based the every six months statement on a report from 2007 where Officer Rivera was treated with respect to his knee. He was also having some gout symptoms at that time. So Dr. Miller really recants this every six months treatment issue in his deposition. And I think it's clear based on the board's own findings that this wasn't a sudden onset of pain for no reason. It was because his knee went the wrong way when he was rushing to a call. So the reliance upon Dr. Miller's report alone I think is reversible error and against the manifest weight of the evidence before this court. Dr. Ellis-Swad and Dr. Mitton, the other two depension board doctors that the board relied upon, their initial reports actually support an award of the line of duty disability. Dr. Ellis-Swad said the injury triggered a significant inflammatory response. That's at page 705 of the record. And that the surgery aggravated the underlying condition. In his opinion, he said, well, the pre-existing conditions were a major factor in contributing to the disability. But he doesn't rule out that this March 2010 call was at least an aggravating factor in the disability. And as this court is aware, based on your prior decision in Buckner, that the work-related injury does not have to be the sole cause or even the primary cause of the disability. It just has to be a causative factor in the disability. Do you have any medical that says that? It's fairly straightforward. Yes, absolutely. Dr. Canestra, who was the third pension board doctor, that the board cites in their findings, his opinion, that this was clearly an aggravation of the underlying condition. And that the meniscus tear was a new injury that resulted in surgery. And the arthritis in the knee was aggravated by the injury. They cite all that in their opinion, but they don't say why they don't give that any weight. They simply disregard his medical opinion. And I think that speaks volumes. I think that was error as well. If you're going to disregard a medical opinion, that he gave a 16-page report, probably the most thorough of all the opinions that the pension board received, where he actually went through that November 2007 call and indicated, still indicated that the March injury was an aggravating factor and ruled out any prior injuries or any symptoms leading up. And he found it very significant, Dr. Canestra did, that the year prior to the call, he had no symptoms, no injuries, no problems with the right knee whatsoever, in finding that this was an aggravation and a line-of-duty injury. Dr. Elliswad and Dr. Mitten also were very clear that this was an aggravation or an exacerbation of his underlying condition. They did change their opinion, however. After the pension board attorney sent them the report from a progress note from November 2007, wherein that physician said every six months he's having flare-ups. Well, we believe that was actually error by the doctor at that point. He was having flare-ups of his gout condition back in 2006 and 2007, approximately every six months. But his right knee condition was not a particularly regular issue. It wasn't happening every six months. But the pension board sent that opinion, and now Dr. Elliswad, Dr. Mitten, they say, well, yeah, everything is preexisting. The work injury had nothing to do with his disability. His pain and his limitation and the inflammation in the knee is all preexisting. That simply defies common sense. Does anybody deny that the meniscal tear was new? No. No, there's no evidence in the record to indicate that there was any type of meniscal tear leading up to the call in March 2010. But is the meniscal tear when he had surgery and perhaps being repaired, did it create the disability? I guess that's the $100,000 question. I believe based on my review of the totality of the records, yes. The officer was attempting to still come back to work even after his surgery in July of 2010, but the physical therapy wasn't getting him better. It wasn't improving the knee condition. So the doctors all say he's disabled as a result of, I guess, the combination of the surgery and the arthritic condition in the knee. They're not real specific, to be honest, in the records. That's the problem. They make a finding. They all agree he's disabled. The question is, from what? Well, I think Dr. Kineshra was clear. From what? For the cause of that disability. Dr. Kineshra was the third pension board doctor. He said that the disabling condition was there both prior to the surgery and after the surgery. So he seemed to suggest that the limitations of the knee were there. Subsequent to the work-related injury was the pain and the limitation. It aggravated his underlying condition to the point where he couldn't return to work even before the surgery. But he was clear that even after the surgery he was still disabled as a result of that. But I think the record is very clear that he didn't have any limitations, didn't have any pain symptoms prior to the work injury. It was those symptoms and limitations that became clear after the work-related injury that he couldn't return to the job. I cite in my brief. Well, I know, but you do have that kind of problem that if it's a degenerative, chronic degenerative situation, that that could happen while driving a squad car, so to speak, in the course of ordinary activity, of daily living. The question is, did that incident speed it up or actually make it a disabling condition? I think, Justice, is that the board didn't find that this was an act of ordinary. Well, let me take that back. In the original decision they said, we don't know if this is an act of duty. Everyone walks over curbs. However, I think they abandoned that argument in the circuit court. I cited many cases, as I did before, Your Honors, about what's considered an act of duty. I think the case law is real clear in Illinois at this point that what Officer Rivera was doing certainly would qualify as an act of duty. Responding to a call, this wasn't just, as Dr. Miller, the workers' counselor, said, a sudden onset of symptoms. It was because of him rushing to this call in order to get there. It was an emergency response situation where he needed to get there in a hurry because his knee went the wrong way while doing so, wearing his full-duty equipment. I cite all that in my brief. Approximately 25 pounds of equipment. So it wasn't just a sudden onset. I think that's the distinction here. If the facts were to bore out that Officer Rivera was just walking into the station at the time where he felt hurt his knee, that might make a difference here. But that's not what the facts are, and I think the Pension Board's own decision agrees that the facts aren't that. So I think it's clear that the call was certainly an aggravating factor. And but for that March 2010 call, the officer would have continued to work full-on restricted duties with no issues. I cite to the Wade case, which in this, it's a 2007 Illinois Supreme Court case, and I think it's right on point with respect to the facts here. And I think it's instructive in finding precedent for this court in the fact that we have a similar situation. In the Wade case, the Pension Board relied upon one physician to disconnect the line of duty injury. Here you have two doctors, or actually three. However, they misstate the evidence for the basis of their opinion. And that's what you had in the Wade case. You had the one doctor they relied upon, Dr. Milgram. He had stated in his report that the officer failed to complain of a pop in his knee when he was injured during the call. The court there, after review of the record, said, well, he did in fact, the officer did in fact complain of a pop in his knee during the call. And for the board to rely upon a physician that misstated the evidence, that was reversible error. That's what we have here. And to back up, in the Wade case, he had a similar situation. It was a knee injury to an officer. He had prior knee problems. He had an old football injury, similar to the situation here. We don't dispute that Officer Rivera had knee problems. But those knee problems were rectified early on, well before he was hired by the Bollingbrook Police Department. He was able to work full unrestricted duties up until the date of the injury. So like the Wade case, there the board, in finding that he should have received a line of duty disability, the Supreme Court said the board shouldn't have relied upon Dr. Milgram where he misstated the evidence. And that's what you have here. Dr. Miller admitted in his deposition that there was no records to show he had problems every six months. There's no evidence in the record that this was just a sudden onset of pain. And the other two doctors the board relied upon, Dr. Ellis Swatt and Dr. Mitten, they changed their opinion after reviewing Dr. Miller's deposition testimony, which you would think after seeing that he had no records of every six months that that wouldn't have occurred here. But, you know, the record is devoid of why the pension board doctors continued to change, why those two doctors changed their opinion, other than them being sent this deposition transcript. You have, actually Dr. Mitten provided four different letters to the pension board attorney in April, May, July and November where he's continuing to change his opinion. The only thing that changed is he took out an exacerbation from the work-related injury and said, no, his pain symptoms and limitations are all pre-existing. And like the Wade court, they said that if Dr. Milgram's report defied common sense by his recitation of the facts, that it should not have been relied upon. And that's what you have here. It defies common sense that the treating doctors, Dr. Herbenick and Dr. Bush-Joseph, were crystal clear in their report to say this was an acute onset of pain and swelling after the injury. Dr. Herbenick, the treating physician, in his evidence deposition said the event caused and or aggravated the condition and that the work injury aggravated any underlying condition of the knee. So the treating physicians who had seen him immediately after the, well, at least close proximity to the injury, they noted the pain, the swelling in the knee. So for the pension board doctors, many months later, over a year later, to say there was no swelling or pain in the knee, there was no symptoms, and all those symptoms were pre-existing, that it defies the facts in the record, and it defies common sense. This officer would have continued to work. So I see my time is up. I would ask that this court, after reviewing the medical evidence here and the facts that the pension board relied upon, that you reverse the decision of the pension board and instruct the pension board to award Officer Rivera a line-of-duty disability. Thank you. Thank you, Mr. Rodger. Mr. Labarde, good morning. Good morning, Your Honors. May it please the Court, my name is Brian Labarde, and I represent the Bolingbroke Police Pension Fund, as well as Henry Cunningham, and his official capacity as president of the fund. Your Honors, to a large extent, I think this case revolves around what standard of review is applied to the pension board decision. What counsel for the appellant is asking you to do is essentially re-weigh the evidence especially the medical evidence in this case, which is something the case law says the courts are clearly prohibited from doing. Your Honors, in this case, as we've covered, the pension board went over voluminous amounts of medical records. In many instances, medical records from more than one doctor and more than one opinion. Three of the four independent medical examiners in this case, meaning the workers' comp doctor and two of the three independent medical examinations done by the pension board, all found that the applicant's disability has no correlation whatsoever to the incident of the call that he was responding to. And the words that they used in that, which are cited in my brief, are unusually strong in my experience when it comes to medical opinions. They're unequivocal. They aren't, it could be this and it could be that. The words, for example, that Dr. Miller, who was the workers' comp doctor, used, are that the cause of his disability is solely and entirely due to his pre-existing condition, not the incident of the call that he responded to. Dr. Miller went on to say in that same report, his injury has nothing to do with the incident in question. These are unequivocal statements. The IME doctors from the pension board, likewise, had similarly unequivocal opinions as to the cause of the officer's disability. Dr. Mitna said it is solely related to his pre-existing condition of degenerative joint disease and gout. Dr. Al-Aswad found it was related to the pre-existing conditions and not the March 16, 2010 incident. Why did they change their opinions? Well, I think that's one of the things that is missing in Appellant's argument, Your Honor, is that he picks and chooses that they change their opinion, but what he ignores is the conclusion. Throughout the course of the hearing, new evidence did come to light. There was an evidence deposition, as is frequently the case. More medical evidence comes to light. If the pension board feels appropriate, they will ask the doctors, we've received these records since your last opinion. Please review these. Let me know if they change your opinion. I'm not aware that the pension board doctors ever issued an opinion unequivocally saying, hey, this is not related to, or I'm sorry, this is related to the act of duty. The ultimate of this one, I don't know, is Al-Aswad said it was an exacerbated factor. Later he writes a letter saying, oh, I don't think it is. And I think, and to the counsel's point regarding that. I'm not sure of the other one, but that one for sure did. The other I thought did. That's correct, Your Honor. Dr. Canestra, who was a pension board physician who did find it connected, is one of the pension board doctors that the decision of the board was not related to. However, I think when you're. . . My question goes to either, and I can't remember which is which, whether Mitten or Al-Aswad said initially in his report to the board that this was an exacerbated factor. Later he writes a letter saying, oh, I changed my mind. And what changed his mind? And I think that happened in the second one, but not quite as dramatic. I think to a certain extent I would have to agree with counsel for the appellant that it isn't entirely clear why his conclusion was changed based on the reports that were submitted to the pension board. There was no evidence deposition of Dr. Al-Aswad. All we have is the records that are in the administrative record to review. What we do know is his unequivocal opinion that this is in no way related to the active duty incident. But an opinion, a doctor's opinion or anything is only as valid as what lies behind it, behind the curtain. That's correct, Your Honor. And I think to that point, counsel brought up the Wade case. And I would suggest that the Wade is dissimilar from this case because in the Wade case, what you had was one doctor of many who said this person is not disabled. He was the only doctor in Wade that said this is not the case. Every other doctor had reached the opposite conclusion. So in that case, the Supreme Court said, well, we're overturning the decision because the only person you relied on had improper evidence and we're not going to consider that. In this case, you have multiple doctors who are all saying the same thing, that he is not disabled. So whether a doctor... They're saying he is disabled. I'm sorry. Yes, that he is disabled. All doctors agree he is disabled. Right. But three of the four doctors say that it's not related to the duty incident. It's due solely to these other conditions. Well, then what's wrong with the one doctor, the one physician who has a different conclusion?  Right. Why is his opinion flawed, so to speak? I think their judge is getting into the weighing of the evidence, which is the province of the pension board to do, to take different medical opinions and sort it out just as a jury would to determine these are who we're going to give more or less credibility to. Did he have the same information as the others who kind of swayed with the wind? He would have, Your Honor, yes. So he never swayed with the wind? No, his opinion remained the same throughout. That's correct. As well as the two treating physicians. To a certain extent, yes, I would disagree that Dr. Mitten-Joseph, who I believe was a treating physician, did at one point say all of the symptoms complained of existed prior to the injury. So while he may have found there to have been some aggravation, it's also unclear because he did say everything that the officer complained of were symptoms he complained of prior to the day he stepped on the curb. Is that consistent with his work record? I'm not sure I understand the question, Your Honor. Wasn't he working every day and going in and doing his job? That's correct. He was on full duty prior to the accident. And I think to that extent, this case is extremely similar to the Carrillo case, which is the first case that's cited in our brief. And in that case, the court made very clear what you need is some evidence of there being a nexus between the two cases, between the act and the disability. In the Carrillo case, the applicant there was asking the court to do a very similar thing to what the applicant here asks, saying I was totally fine, I was on duty, I had no symptoms. All of a sudden, this event occurred and now I'm hurt. Ipso facto, it must have been that event. Well, that's a chain of events analysis. It is. And to a certain extent, I believe that that's what the applicant is asking you to do in this case, Judge. The Carrillo is sufficient in compensation cases. I'm sorry? That is an appropriate analysis and can support an award in compensation cases, workers' compensation cases. I think in the police and fire pension board cases, which we've said in our brief, makes it very clear that it's not sufficient. The Carrillo is specifically on point, I would argue, that says in this case, Carrillo was also a degenerative condition issue. And there was a duty incident, but they said this is clearly related to the prior condition and it's not related to duty. There is no nexus. There must be a nexus. And the medical evidence in this case does not provide the board or any other fact finder with any evidence to create a nexus between the act of duty and the disability. So, okay, the doctors you're relying on don't give that nexus? Correct. How about the other doctors? Did they give a nexus opinion? As Clint pointed out, it is sufficient to have an aggravation. That is good enough to have a line of duty disability. But in this case, I don't think any doctor came forward and explicitly said there is an aggravation due to these events and that is the cause of the disability. There is a significant medical history prior to the incident in question. Solely the fact that he was released to full duty and was serving prior to that isn't sufficient to tie that to his disability. That seems to be the $64,000 question is the nexus question. It very much is, Your Honor. And, you know, to that extent, I would again say, you know, we are very factually intensive in this case. And I would suggest that, again, the standard of review requires the court to defer to the fact finder that should be taken as prima facie true and correct. These are all findings of fact and this is what the pension board found based on conflicting medical evidence. I don't understand this slide exactly. I know nothing about medical stuff. So help me out here. The way these doctors talk, Miller, Mitten, and Alaric, they seem to say that this would have happened, could have happened in any circumstances. It just happened to happen at this particular time in this particular place. I mean, are they saying essentially that he could be lying in bed asleep one night, wakes up in the morning with pain in his knee? I mean, I don't understand how there's no nexus, if you will, at all. I share your struggle with that medical evidence, Your Honor. And I would say that I am not a doctor either. No one on the pension board is a doctor. This is why the pension board retains those doctors to make these findings of fact that they can weigh. How does it work? Help me out here. How does it work? This is in his line of duty and he's going to help out his fellow officer in a potentially dangerous situation, I'm going to assume. Why is that not a factor when he's injured in that situation? Why is it not an exacerbation? I think it is. What can I say to myself? It makes that work for me. Because I'm not a doctor, I think you would have to say the same thing that the board said. We are deferring to the medical opinions in this case, which, again, clearly and unequivocally say this is solely due to a pre-existing condition. And they didn't just say solely due to a pre-existing condition. Some of them went farther and even said this has absolutely nothing to do with the act of duty in question. And that's what the standard is based on Carrillo and the other cases we said in our brief is there must be some sort of nexus between the injury. And the medical evidence is what should provide that nexus. In this case, the board found that that medical evidence was lacking and therefore it didn't exist and so it was not a line of duty. Let me ask you this. How do they decide? They have six doctor's reports and they decide that they're going to rely on three and not rely on the other three. How do they make that decision? That's in the same way that a jury would weigh evidence in any trial, Your Honor. They weigh the evidence that's been admitted during the administrative hearing. It's discussed typically in closed session as to which evidence to give more credit to or not. And the pension board arrives at a determination. I think in this case, if you look at the opinions that they rely on, those opinions were clear and unequivocal. The opinions that may or may not say that this is an aggravation or contributed to were not as clear cut and unequivocal as those doctors that opined that it was. Let me ask you about Dr. Miller. They relied on Dr. Miller. His facts that he set out as the basis for his decision are clearly contrary to the facts that the board found. Why would they rely on him? I would say two things as to that. The first thing that I would say is the issue of whether or not the officer was running or walking I think is a red herring. As we point out in our brief, the evidence that Dr. Miller was relying on is the evidence that was provided to him by the applicant who said in his report when he went for an examination, I was walking over a curb. Now whether he was walking or running, I don't know is germane to his medical injury. I would suggest Dr. Miller's report is very similar to you again looking at the Carrillo analysis in that case. Dr. Miller is saying there was a report every six months of some sort of aggravation. And it turns out that that evidence was not in the record as he admitted in his evidence deposition.  To a certain extent, you're reversing the burden and putting the burden on the board to show no nexus when in reality the burden is on the applicant to show that there is a nexus. I would also add that the doctor misrepresents the basis for the decision. Well, I don't know that he misrepresented the basis for his decision, Your Honor, because even after the evidence deposition, admitting that, yeah, you know, I did not have medical records for these years, he does not change his opinion. He does not reverse course and say, I therefore strike the prior opinion that I had in this case that this was not related to his active duty. Okay, but his opinion was based, at least in part, on information that he admitted he didn't have. I know people who decide that they're going to dig in and stick with an opinion even if there's no factual basis for it. But that doesn't mean that anybody should believe them. Wasn't his opinion in fairness, Your Honor, based upon the record that reported a period of complaints every six months prior to that report by another physician, am I correct? You are correct, Your Honor. Okay, and then he renders an opinion, maybe making an assumption that from that point forward he would have the continuing complaints. But when it's presented to him that there is no, from that point forward, record of continuing complaints every six months, he doesn't change his opinion. Is that correct? That's correct, Your Honor. He's given the opportunity to change his ultimate opinion and he does not. But maybe he doesn't have to medically change his opinion, but the question becomes, is it as weighty as it was before? Because the facts found by the board are the facts, is that from that point forward there were no more complaints every six months. So if they found that to be true, would they maybe not question whether Miller's opinion would have the weight if they would have found otherwise? I think you are going down a weight analysis there. And bear in mind that again in this case we had three doctors, one of which was Dr. Miller, making these findings. So even if you were to exclude Dr. Miller's opinion, the pension board still had two doctors upon which they relied that does support their decision. And the standard is any evidence in the administrative record that supports their decision should result in an affirmance of their decision. As long as it's competent evidence. That's correct, Your Honor. And I have not heard anybody suggest that the other two opinions are necessarily based on incorrect information as Dr. Miller's opinion may have been. I would also add that going to the Carrillo analysis, again with the nexus, the case cited by the appellant in his brief to distinguish that, which is the Hoffman v. Desplaines case, I would add that that's a Rule 23 opinion. I would ask that this Court give no weight to the Hoffman case, which does the same analysis as Carrillo essentially. In addition to the point of the doctor's opinions, we also cite in our brief the Kramarski case and the Goodman case. And in both of those cases you had only one doctor who supported the pension board's determination. And those cases were both upheld in appeal on the opinion of only one doctor. Because again the standard is any evidence in the record that supports the pension board's decision should result in affirmance. And in this case we have more than one doctor and more than ample evidence to support the conclusion of the pension board. It's not counting up doctors, but if you had to say who's your strongest doctor, the unassailable doctor. Because it is true you need only something. But if you had to pick one of those two remaining doctors, which one would it be and why? Your Honor, I would have to say that both Dr. Midden and Dr. Ellsworth's opinion, not holding to the one doctor theory. Both of those opinions again I think unequivocally support, after a thorough review of the medical evidence, the conclusion that the acts of duty did not contribute in any way, shape, or form to his disability. Which again in my experience is an unusual opinion to get a doctor to commit to a position that clear. Which again I think is why the pension board decided to give greater weight to those opinions, because they were clear and unequivocal. Some of the other medical opinions were sort of wishy-washy in terms of whether this did or did not aggravate or whether it could have contributed or not. Because it's a difficult analysis from a medical standpoint when you're dealing with a degenerative condition and then an injury. And I'd suggest that that is the reason why the pension board relied on the opinions it did, because those were clear and unequivocal after review of the medical evidence that all the doctors reviewed, that this in no way, shape, or form contributed to his disability. I have nothing further I think to add, Your Honor. So for those reasons, we would ask that this Court affirm the decision of the Circuit Court of Will County, which affirmed the decision of the pension board granting a non-duty disability and denying a non-duty claim. Thank you. Thank you, Mr. McClain. Mr. Rogers, rebuttal? Yes, thank you. Just to clarify and respond to some of the arguments made by counsel, I'm not asking this Court to re-weigh the evidence, but what I'm asking is that this Court look at the factual basis of the opinions of the physicians, and I suggest to you that the ones that change their minds don't have a good reason or any facts in the record as to why they changed their minds. I want to clarify something that counsel, I think, was in error about. The two treating physicians were clear and unequivocal that the work-related injury was an aggravating factor in the disability, which is the standard here. And we talked about nexus. I'm sorry? What about Dr. Conestra? Dr. Conestra? He was clear and unequivocal at page 728 of the record. He says the arthritis was aggravated by the 3-16-10 injury, that he sustained a new meniscal tear as a result of that injury. And what's interesting, as I mentioned, Dr. Conestra did a 16-page report. He talks about in his report, his initial report, the November 2007 progress note where prior to that he was having flare-ups of the knee every six months. And he didn't find that significant in his ultimate determination unequivocally that this was an aggravation of an underlying condition. What's interesting is the pension board attorney sends Dr. L. Aswad after he does his initial report, and he says at page 705 of the record, the injury triggered a significant inflammatory response and was aggravated by surgery. So the pension board doctors are unequivocal in that this was an aggravation initially. And Dr. L. Aswad and Dr. Mitten had that November 2007 record because we know that Dr. Conestra had that same record when he gave his initial evaluation by the pension board. The pension board sends all the records to the doctors at the same time. So the fact that then the pension board attorney says, hey, what about this record from 2007, does that alter your opinion? I suggest that that's kind of tainting the independence of that physician at that point because he already had that record, didn't find it significant, found there was an aggravation, but then you ask him two other times to look at additional records to see if that changes his opinion. They do change their opinion and say, oh, yeah, we got it wrong. There is no aggravation. The pain, the swelling, the limitations were all preexisting. But that's not supported by the record. And it's not supported by the facts in the record. And that's why this is against the manifest way of the evidence. In those reports, that could have changed their mind. From what I could tell from the record, what was sent to the physicians after their initial opinion was the deposition of Dr. Miller, the workers' camp doctor, which is a brief deposition in the record. More or less, I think what's significant about it is he admits he didn't have any records leading up to the injury while the officer was working to support his statement that there was a symptomology prior to the injury. So I don't think that would have helped change the doctor's minds. They were given the deposition transcript of Dr. Herbenek, which was the treating physician. He is unequivocal in saying that the event caused or aggravated the condition. And there was acute onset of pain and swelling after the injury in March. So I don't know what in there would change their minds. Well, let's go back to that first one, that there was no prior symptomology. There was prior symptomology. In 07 that would resolve. But that still is prior to the incident. Well, I guess I would say it this way, it did not in any way limit his ability to work. Well, that's an argument the attorneys make. They have cold, hard medical records that if these doctors had not had any indication prior to rendering their opinion that there was prior symptomology, even 07 and back, isn't that significant? I don't believe that. I mean, everything is significant when you've got a doctor. But there was prior symptomology. The argument is it was so long ago and there's no evidence up to the incident that that symptomology was disabled. But there was symptomology. I'm just trying to look for something that could explain the change in the conclusion. Well, it's interesting, as I mentioned, is they already had that record that there was prior symptomology. Okay, that is the fact, that they'd already had that 07 prior, prior symptomology presented to them when they rendered the first opinion. Well, it is a fact because Dr. Conestra comments on it in his report, and he's providing the initial reports at the same time as the other two pension board doctors. As I was getting to, Dr. Ellis-Swad, who's one of the pension board doctors the board relied upon at page 706 of the record, this is when he changes his opinion. First he says at page 705 in his report, the injury triggered a significant inflammatory response. Then at page 706 when he changes his opinion, he says the pain, swelling, and limitation of motion all were preexisting. That's his changed opinion. So he's actually going to now, you know, the swelling in the knee, which is contrary to the treating physicians that all say after that work-related injury there was significant swelling and a significant exacerbation of the pain symptoms. So even if there was prior symptomology three years earlier, the symptomology that led to his disabling condition was much different, much more severe based on the notes of the treating doctors. I know I'm running out of time here, but there is an absolute nexus to the employment here. You talked about a chain of events theory that is applicable in workers' comp. I think it's very similar. Oftentimes pension cases you look to the workers' comp act to determine whether or not the causation was there. I think a causative factor, which is the standard under pension cases to determine whether or not it was line of duty, was the injury a causative factor in the disabling condition? It most certainly was here. But for that March injury on that call, he would not have had the symptoms, the pain, the limitations that he had, as documented by his treating physicians. The Shupak case versus Northbrook Firefighters Pension Board, I cited in my brief, is significant. It says even when a decision is supported by some evidence, which is undisputed with sustained administrative finding, it is not sufficient to rely upon if upon consideration of all the evidence, the finding is against the manifest weight of the evidence. That's what you have here. Looking at all the medical in its totality, counsel says that the pension board doctors were clear and unequivocal. That's simply not true. They were clear and unequivocal that this was an aggravation in their initial reports. And then for whatever reason, they changed. So we ask that the court, based on the totality of the evidence, reviewing the record, reverse the decision of the pension board and direct them to find Officer Rivera as entitled to a line of duty disability. Thank you for your time. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel change.